Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner as follows:
Based upon all the competent credible evidence of record, the Full Commission makes the following
FINDINGS OF FACT
1. Plaintiff is a 35 year-old married male who has remained unemployed since his termination from defendants employ for sleeping at work on June 24, 1993. He is a high school graduate and attended Elizabeth City State University for two years, playing basketball there. Until his ultimate termination plaintiff was employed by defendant Hatteras Yachts for 16 to 17 years and on the side was also operating an auto repair and salvage business as well as a variety store selling new and used auto parts.
2. When injured he was an electrical propulsion mechanic responsible for operating a forklift and travel lift as well as fueling vessels among other duties.
3. While attempting to fuel a vessel on April 10, 1990 plaintiff fell some 8 to 12 feet off a scaffold sustaining the admittedly compensable injury by accident giving rise hereto resulting in an intra-articular fracture of his left wrist among other injuries.
4. On November 27, 1991 plaintiff ultimately reached maximum medical improvement and/or the end of the healing period from and following the involved wrist fracture when he was rated for permanent-partial disability by Dr. Pelletier, at which time as a result of the same injury he sustained the admittedly compensable twenty (20) percent permanent-partial disability of the left upper extremity that was the subject of the parties July 13, 1994 stipulation.
5. Plaintiff's primary medical treatment for his injury was rendered by Dr. Pelletier, an orthopedic surgeon, who provided a conservative course of care. With the same treatment plaintiff was subsequently able to return to work for defendant-employer in May of 1990 after Memorial Day and to continue regularly working until his termination from defendants employ for sleeping at work on June 23, 1994.
6. Although because of the permanent injury to his left upper extremity plaintiff was unable to handle vibrating equipment or do heavy lifting with the affected left hand, defendant-employer was able to provide him with work suitable to his capacity and plaintiff to continue regularly performing the same work until his termination. During this same period plaintiff also continued to operate the side businesses described in Finding of Fact Number 1 hereinabove.
7. When plaintiff developed anxiety and depression as a result of his April 10, 1990 injury Dr. Pelletier referred him to a psychiatrist, Dr. Charles Godwin, who initially began treating him for his resulting depression and anxiety on July 24, 1991 and attempted a number of different medications to control the same conditions, which remained non-incapacitating until June 24, 1993.
8. Although as a result of the various types of medications that Dr. Pelletier and Godwin had earlier prescribed for his resulting physical and psychological problems and as indicated by the nurses' notes of October 15, 1990, August 6, 1991 and August 9, 1991 and July 30, 1992, plaintiff experienced problems with some of the same medications making him sleepy or otherwise having sleeping difficulty associated with his depression. By February of 1992, not only were plaintiff's depression and anxiety in stable remission such that he was no longer experiencing symptoms of insomnia, loss of appetite or lack of energy, but he was no longer experiencing any sleep problems associated with the medications he was then receiving, (Xanax and Zoloft), and the situation remained unchanged until June 24, 1993.
9. On the last mentioned date the premises group leader, Bruce Williams, directed plaintiff and another propulsion mechanic, Shelton Dawson, to launch a 50 foot convertible (yacht). While Mr. Dawson was temporarily completing another task, plaintiff elected to stay at the yacht to be launched. Because of feeling hot and dizzy plaintiff got up on the same yacht and went to sleep in one of its staterooms. There is no competent, credible medical or other evidence that plaintiff's going to sleep that day at work had anything to do with the medications he was taking that day or any of the physical or psychological consequences of his April 10, 1990 injury.
10. Although both Bruce Williams and Shelton Dawson observed him sleeping; plaintiff denied he was sleeping at the time and continued to deny it at hearing. Upon discovering him sleeping, Bruce Williams told plaintiff to go to the company's nurse to find out a medical reason why he was sleeping. When plaintiff was seen by the plant nurse that day he never said that he went to sleep; but rather, only that he was feeling bad and hot and sweaty, that he got up on the boat to sit and rest a few minutes and was found by Bruce Williams sitting on the boat. He gave no explanation for the fact that he was "feeling bad" much less that it had anything to do with his April 10, 1990 injury or treatment that he was receiving for the same injury and in fact never told the nurse that he was caught sleeping by the group leader and that was the reason he was sent to see her. Although he denied it, plaintiff was sleeping at work and, as previously stated, there is no competent, credible medical or other evidence that his being asleep had anything to do with his April 10, 1990 injury or the treatment being received for it.
11. As a result of being found sleeping on the job on June 24, 1993 plaintiff was subsequently terminated from defendants' employ. Due to his job loss plaintiff developed incapacitating depression and anxiety requiring that he return to Dr. Godwin, who subsequently hospitalized him, and remains totally incapacitated thereby.
* * * * * * * * * * * * *
Based upon the foregoing findings of fact, the Full Commission makes the following
CONCLUSIONS OF LAW
1. As a result of the injury by accident giving rise hereto plaintiff retains a twenty (20) percent permanent-partial disability of the left upper extremity entitling him to 48 weeks of compensation at a rate of $298.67 per week commencing as of November 27, 1991 when he reached maximum medical improvement and/or the end of the healing period from and following the same injury.
2. For the reasons stated in the above Findings of Fact, the disabling depression and anxiety that plaintiff has experienced since June 24, 1993 is not the result of the involved April 10, 1990 injury; but rather, due to the loss of his job for sleeping at work on June 24, 1993.
* * * * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Defendants shall pay plaintiff, on account of his twenty (20) percent permanent-partial disability of the left upper extremity, 48 weeks of compensation at a rate of $298.67 per week commencing as of November 27, 1991. Such compensation having accrued the same shall be paid in lump sum, without commutation, subject to a reasonable attorney fee hereinafter approved.
2. A reasonable attorney fee in the amount of $2,500.00 is hereby approved for plaintiff's counsel which shall be deducted from the above award and forwarded directly thereto.
3. To the extent the same are reasonably designed to tend to effect a cure of, provide needed relief from and/or lessen the period of disability associated therewith defendants shall pay all reasonable and necessary medical expenses incurred by plaintiff as a result of the injury by accident giving rise hereto, including as part thereof Dr. Godwin's treatment prior to June 24, 1993, but not thereafter, when bills for the same are submitted on proper forms, through the above-named servicing agent, to the Industrial Commission for approval and are approved by the Commission.
4. Defendants shall bear the costs, including as part thereof the $225.00 expert witness fee previously awarded Dr. Godwin for his deposition testimony to the extent the same has not already been paid.
 S/ _____________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ __________________ JAMES J. BOOKER COMMISSIONER
S/ __________________ DIANNE C. SELLERS COMMISSIONER